UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

BRENDAN BOEHNER, et al.,

                                        Plaintiffs,

                                                            Case # 21-CV-6574-FPG

v.

                                                            DECISION AND ORDER

THE CITY OF ROCHESTER, et al.,

                                        Defendants.

## INTRODUCTION

This is one of many cases pending before the Court that arises out of protests that erupted in the City of Rochester in September 2020 following the release of news that Daniel Prude, an unarmed black man, died during an encounter with police in March 2020.   Plaintiffs Brendan Boehner, Alanaleilani Connolly, Carolyn Delvecchio Hoffman, Rebecca Goldfeder, Solomon Gominiak, Ryan "Rylea" Howe (they/them), Nicole Lindquist, Susanna Moore, Ryan Mullaney, Barbara Rivera, Alyson Trombulak, and Better Wolfanger—protestors who allege they were injured during the protests—filed this action in state court against the City of Rochester ("City"), Rochester Police Department ("RPD") Sergeant Francis Archetko, Officer Whitney Celentano, Officer Thomas Kirk, Officer Daryl Hogg, Officer Kaitlin Turner, Lieutenant Jeremy Anzalone, and John Doe Police Officers 1-200, the County of Monroe (the "County"), County Sheriff Todd Baxter ("Baxter"), and Richard Roe Sheriff's Deputies 1-200,[1] for multiple federal and state claims.   In response to a motion to dismiss the complaint, Plaintiffs filed an Amended Complaint in state court.   Thereafter, Defendants removed the case to the Court.   ECF No. 1.   City Defendants

---

[1] Archetko, Celentano, Kirk, Hogg, Turner, Anzalone, and John Doe police officers ("RPD Officers") and the City are collectively referred to as "City Defendants."   Richard Roe Sheriff's deputies ("Sheriff's Deputies"), the County, and Baxter are collectively referred to as "County Defendants."   The RPD Officers and Sheriff's Deputies are collectively referred to as "Individual Defendants."   All defendants are collectively referred to as "Defendants."

then filed a motion to dismiss the Amended Complaint, ECF No. 9, and, on November 19, 2021, Plaintiffs filed a Second Amended Complaint ("SAC").[2]   The Court later determined that the SAC mooted the City Defendants' motion to dismiss the Amended Complaint.  ECF No. 25.

Plaintiffs[3] raise 15 claims in the SAC: (1) excessive force against Individual Defendants, pursuant to § 1983;  (2) First Amendment infringement and retaliation against all Defendants, pursuant to § 1983; (3) failure to intervene against Individual Defendants, pursuant to § 1983; (4) assault and battery against the City and Individual Defendants, pursuant to New York State law; (5) negligent training, supervision, and discipline against Baxter, pursuant to New York State law; (6) negligence against the Individual Defendants, pursuant to New York State law; (7) Howe's claim for unlawful seizure/false arrest against the City Defendants, pursuant to New York State law; (8) Howe's claim for unlawful seizure/false arrest against RPD Officers, pursuant to § 1983; (9) Howe's claim for assault and battery against the City Defendants, pursuant to New York State law; (10) Howe's claim for excessive force against City Defendants, pursuant to § 1983; (11) Howe's claim for malicious prosecution against RPD Officers, pursuant to § 1983; (12) Howe's claim for malicious prosecution against the City Defendants, pursuant to New York State law; (13) Howe's claim for evidence fabrication/denial of fair trial against RPD Officers, pursuant to § 1983; (14) municipal/*Monell* liability against the City for alleged violations of the First, Fourth, and Fourteenth Amendments related to the protests, pursuant to § 1983; and (15) municipal/*Monell* liability against the County and Baxter for alleged violations of the First, Fourth, and Fourteenth Amendments related to the protests, pursuant to § 1983.

---

[2] Plaintiffs style ECF No. 11 as the "First Amended Complaint," however, it appears from the removal documents that Plaintiffs filed a First Amended Complaint in state court, meaning that the amended complaint filed in this Court is actually the *Second* Amended Complaint.  As the Court explains below, it will construe the SAC as the operative pleading.

[3] Unless otherwise indicated, the claims are asserted on behalf of all Plaintiffs.

On November 22, 2021, the City Defendants filed a motion to dismiss the SAC.  ECF No. 13.  On January 28, 2022, the County Defendants filed a motion to dismiss the SAC.  ECF No. 17. Plaintiffs filed a motion to amend *nunc pro tunc*.  ECF No. 19.  The motions are now fully briefed.

## FACTUAL BACKGROUND

Plaintiffs participated in large public demonstrations in Rochester.

On May 30, 2020, Plaintiffs attended a peaceful protest in front of the Public Safety Building ("PSB") in Rochester.  ECF No. 11 ¶ 43.  During the protest, Plaintiffs were injured when Individual Defendants "indiscriminately shot pepper balls into the crowd, physically pushed protestors and struck them with batons."  *Id.* ¶ 46.

In September 2020, following the release of the body-worn camera footage of Daniel Prude's death, Plaintiffs participated in several nights of racial justice protests. On September 2, 2020, at around 5:00 p.m., Plaintiffs were peacefully protesting in front of the PSB when they were shot with pepper balls and sprayed with pepper spray and/or tear gas.  *Id.* ¶¶ 51-52.  The following night, Plaintiffs were again shot "at head level" with tear gas cannisters and pepper spray.  *Id.* ¶¶ 53-55.

On the night of September 4, 2020, Individual Defendants escorted Plaintiffs and other peaceful protestors onto the Court Street Bridge.  *Id.* ¶ 56.  However, when the protestors reached the other side of the bridge, law enforcement stopped the protestors with metal barricades, trapping them on the bridge.  *Id.* ¶ 57.  Law enforcement ordered the protestors to disperse, but because the protestors were trapped on the bridge, there was nowhere to go.  *Id.* ¶ 58.  Again, law enforcement fired pepper balls, pepper spray, and tear gas at the protestors.  *Id.* ¶¶ 59-60.

Plaintiffs again attended peaceful protests on the night of September 5, 2020.  That night, police escorted protestors until they approached the intersection of Broad Street and Exchange

Boulevard, which the police had closed.  *Id.*  ¶ 61.  When Plaintiffs approached the intersection, they were met with an overwhelming law enforcement presence.  *Id.*  "RPD [O]fficers and Sheriff's [D]eputies began to launch flash bang grenades, release tear gas, and shoot pepper balls into the crowd indiscriminately."  *Id.*  Some protestors sought refuge from the police inside a church, but police surrounded the church and "shot hundreds of rounds of pepper balls at the building."  *Id.* ¶ 65.

On the night of September 12, 2020, several hundred protestors marched from the location where Daniel Prude was killed toward the RPD station on Child Street.  Apparently in retaliation for the protestors' "anti-police rhetoric," the police "unleashed chemical weapons, including tear gas and pepper spray."  *Id.* ¶ 71.

Over a month later, on October 13, 2020, Plaintiffs and several other individuals went to the PSB to inquire about their friend, Nicholas Wilt, who had been falsely arrested and was being detained on a mistaken warrant.  *Id.* ¶ 74.  Without giving the protestors an opportunity to leave, the RPD Officers "repeatedly struck protestors with their batons, causing numerous individuals to suffer serious injuries."  *Id.* ¶ 77.  After those protestors were pushed outside, additional protestors, including Mullaney arrived and was targeted and shot with pepper balls.  *Id.* ¶ 79.

Although Plaintiffs' experiences were largely the same, the SAC details each Plaintiffs' experiences during the protests described above.  *Id.* ¶¶ 139-263.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . 'to state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim for relief is plausible when the plaintiff pleads facts sufficient to allow the Court to draw reasonable

4

inferences that the defendant is liable for the alleged misconduct. *Id.* In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true the factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. *See Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). At the same time, the Court is not required to credit "[l]egal conclusions, deductions, or opinions couched as factual allegations . . . [with] a presumption of truthfulness." *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007) (internal citations and quotations omitted). The "touchstone for a well-pleaded complaint under Federal Rules of Civil Procedures 8(a) and 12(b)(6) is plausibility." *In re AOL Time Warner, Inc. Sec. Litig.*, 503 F. Supp. 2d 666, 670 (S.D.N.Y. 2007) (citing *Twombly*, 550 U.S. at 560-61). To meet this plausibility standard, the factual allegations must permit the Court "to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679.

## DISCUSSION

### I.     Motion to Amend

As explained above, Plaintiffs filed this case in state court. In response to motions to dismiss, Plaintiffs filed an Amended Complaint. Defendants then removed the case to federal court. ECF No. 1. After removal, the City Defendants moved to dismiss the Amended Complaint. In response to that motion, Plaintiffs filed the SAC. The City Defendants now argue that Plaintiffs' SAC should be dismissed in its entirety because Federal Rule of Civil Procedure 15 only permits one amendment as of right and Plaintiffs previously amended the complaint as of right in state court.

Plaintiffs oppose dismissal on those grounds. In the alternative, they move to amend the complaint *nunc pro tunc*. ECF No. 19.

"Rule 15(a)(2) instructs that a court 'should freely give leave [to amend] when justice so requires.'" *Willis v. Rochester Police Dep't*, No. 15-CV-6284-FPG, 2018 WL 4637378, at *2 (W.D.N.Y. Sept. 27, 2018) (quoting *Grullon v. City of New Haven*, 720 F.3d 133, 139-40 (2d Cir. 2013)). "When—as in this case—a motion to amend is filed in response to a pending motion to dismiss, 'a court has a variety of ways in which' to proceed, 'from denying the motion [to dismiss] as moot to considering the merits of the motion [to dismiss] in light of the [proposed] amended complaint.'" *Willis*, 2018 WL 4637378, at *2 (quoting *Conforti v. Sunbelt Rentals, Inc.*, 201 F. Supp. 3d 278, 291 (E.D.N.Y. 2016)).

Here, the Court elects to grant Plaintiffs' motion to amend, ECF No. 9, and treat the SAC as the operative pleading for purposes of deciding the motions to dismiss. The Court will apply arguments in Defendants' previous motions to dismiss to evaluate the viability of the SAC.

## II.    Claims Asserted on Behalf of all Plaintiffs

### A.    First Claim: Excessive Force – Individual Defendants

Citing nothing, RPD Officers suggest that the protests were not peaceful and therefore any force was not excessive. ECF No. 9-1 at 4. They also argue, without authority, that "exposure to tear gas or being struck by a pepper ball while standing in a crowd dotted with rioters, looters, and violent protestors does not make out a sufficient excessive force / Assault and Battery claim." ECF No. 9-1 at 4. "It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990). Accordingly, RPD Officers' arguments are unavailing.

The Sheriff's Deputies argue that the claims against them must be dismissed because Plaintiffs' allegations constitute impermissible "group pleading." To be sure, a complaint that

"lump[s] all the defendants together in each claim provid[es] no factual basis to distinguish their conduct . . . . fail[s] to satisfy [the] minimum [pleading] standard." *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (summary order) (internal quotations omitted).  But Plaintiffs have not lumped all Defendants' conduct together.  Rather, they claim that unknown Sheriff's Deputies "and/or" unknown RPD Officers shot pepper balls at them and used pepper spray on them during the September 2-6, 2020 protests.  ECF No. 11 ¶¶ 139-263.  These are plaintiff-specific allegations regarding known and as-of-yet unknown law enforcement officers.  Given the presence of law enforcement from multiple jurisdictions at the protests, such a claim is not implausible.

The County Defendants also argue that Fourth Amendment liability is premised on the use of "excessive force when detaining or arresting individuals," and that the SAC contains no allegation that any County Defendant used excessive force against Plaintiffs during their arrests, nor are there allegations that all Plaintiffs were arrested.  *See Jones v. Parmley*, 465 F.3d 46, 61 (2d Cir. 2006).

Although not all Plaintiffs were arrested, they have all adequately alleged that unknown Sheriff's Deputies used "less-than-lethal" military-grade weapons and chemical weapons against them.  ECF No. 11 ¶ 25.  More specifically, Plaintiffs allege that Sheriff's Deputies subjected Plaintiffs to the use of chemical weapons, tear gas, and pepper balls.  Courts have routinely concluded that the use of such weapons against protestors constitutes a seizure for purposes of the Fourth Amendment.  *See Edrei v. Maguire*, 892 F.3d 525, 540-42 (2d Cir. 2018) ("Our sister circuits and district courts in this Circuit have routinely applied excessive force principles to crowd control situations.").

**B.      Fourth Claim: Assault & Battery – City and Individual Defendants**

"Courts in the Second Circuit have found that [f]ederal excessive force claims and state law assault and battery claims against police officers are nearly identical." *John v. City of New York*, 406 F. Supp. 3d 240, 245 (E.D.N.Y. 2017) (internal quotation marks omitted).  Therefore, for the same reasons articulated above, Plaintiffs' Fourth Claim for assault and battery may proceed.

**C.      Second Claim: First Amendment Infringement & Retaliation – All Defendants**

The SAC advances two theories of First Amendment liability: (a) that Defendants "retaliated against Plaintiffs for engaging in speech and/or conduct protected by the First Amendment" and (b) that Defendants "imposed restrictions on such protected speech and/or conduct that violated Plaintiffs' free speech rights, including, but not limited to, in falsely arresting Plaintiff HOWE, in subjecting Plaintiffs to excessive force, in selectively enforcing laws and regulations against Plaintiffs, and in otherwise violating Plaintiffs' rights."  ECF No. 11 ¶ 280. Both theories are premised on Defendants' retaliation for Plaintiffs expressing their views.

To plead a First Amendment retaliation claim a plaintiff must show: "(1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions caused him some injury." *Dorsett v. Cnty. of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013).

The County Defendants argue that Plaintiffs have not established any constitutional injury because Plaintiffs have not alleged that they were unable to protest or stopped protesting because of any action taken by the Sheriff's Deputies.

However, "[t]he type of allegations necessary to satisfy the injury element of a First Amendment retaliation claim vary depending on the factual context." *Morales v. Valley Stream*

*Union Free Sch. Dist. 24*, 527 F. Supp. 3d 470, 474 (E.D.N.Y. 2021) (quoting another case).  As a result, "[c]hilled speech is not the *sine qua non* of a First Amendment claim. A plaintiff has standing if he can show *either* that his speech has been adversely affected by the government retaliation or that he has suffered some other concrete harm." *Dorsett*, 732 at 160 (emphasis in original).

Here, Plaintiffs allege that they were physically injured because Defendants did not agree with their views on policing.  ECF No. 11 ¶ 281.  Viewed in the light most favorable to Plaintiffs, at this stage, the Court concludes that such physical injuries are "some other concrete harm" and therefore meet the causation requirement.

To the extent City Defendants argue that the City's emergency order vitiates any First Amendment retaliation claim, that argument is misplaced.  To be sure, in *Martin v. Warren*, 482 F. Supp. 3d 51 (W.D.N.Y. 2020), District Judge Charles J. Siragusa denied plaintiff-protestors' motion for a preliminary injunction, concluding that they were not likely to succeed on their arguments that the emergency order's curfew was pretextual, unrelated to significant government interests, or not narrowly tailored.  But he did not affirmatively find that the emergency order was a reasonable time, place, and manner restriction.  And even if he did, there is nothing to suggest that police action purportedly taken under the emergency order could not supply the basis for a retaliation claim.  Finally, as Plaintiffs point out, many of the alleged retaliatory acts did not take place during the time the emergency order was in force.

The City Defendants' intimate that the disruptive nature of the protests somehow negates Plaintiffs' First Amendment claims.  But this argument assumes that the protests were violent. Such a suggestion is not found anywhere in the SAC.  Rather, Plaintiffs allege the opposite: that

the protests were peaceful.  The Court will not resolve this factual issue on a motion to dismiss and, accordingly, the Second Claim may proceed to discovery.

### D.       Third Claim: Failure to Intervene – Individual Defendants

"It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Allen v. City of New York*, 480 F. Supp. 2d 689, 694 (S.D.N.Y. 2007) (quoting another source).  To state a claim against an officer for his or her failure to intervene, a plaintiff must allege facts demonstrating that "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) [the officer knew] that the victim's constitutional rights were being violated; and (3) the officer [did] not take reasonable steps to intervene." *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008).

Individual Defendants argue first that Plaintiffs have failed to plead the second element— that they knew that Plaintiffs' constitutional rights were being violated.  Although this claim in the Amended Complaint does not contain the words "knew" or "knowledge," it does state facts sufficient to infer knowledge.  For example, the Amended Complaint contains facts suggesting that Individual Defendants were in close proximity to all of the alleged constitutional violations as they were occurring and were therefore aware of them.  These allegations are sufficient to proceed to discovery.  *Weaver v. City of New York*, No. 13-CV-20 CBA SMG, 2014 WL 950041, at *7 (E.D.N.Y. Mar. 11, 2014) ("Because [plaintiff's] complaint alleges facts from which this Court could reasonably infer that at least one of the defendants had reason to know that [plaintiff] was being unjustifiably arrested, her claim may proceed.").

Second, Individual Defendants argue that a failure to intervene claim cannot lie against law enforcement officers who also engaged in the underlying constitutional violation.  Essentially,

Individual Defendants urge the Court to dismiss the failure to intervene claim because Defendants could not possibly have committed the underlying constitutional violations (such as excessive force and false arrest) while they simultaneously failed to intervene to prevent those same violations.

That is a misreading of the facts and law.  Plaintiffs allege multiple constitutional violations, and it is possible that a defendant directly participated in one constitutional violation while he failed to intervene in another.  Moreover, "the plaintiff is allowed to plead in the alternative" and "the alternative claims need not be consistent."  *Breton v. City of New York*, 404 F. Supp. 3d 799, 814 (S.D.N.Y. 2019) (declining to dismiss failure to intervene claim on the basis that defendant "directly participated in both the arrest and prosecution and therefore could not have intervened").

### E.       Fifth Claim: Negligent Training, Supervision, and Discipline – Baxter

"It is well-settled under New York law that a sheriff may not be held vicariously liable for the torts committed by its employees while they are performing a criminal justice function."  *Ryan v. Moss*, No. 11-CV-6015P, 2013 WL 956722, at *18 (W.D.N.Y. Mar. 12, 2013).  There is no question that the Sheriff's Deputies here were performing a criminal justice function during the protests.

However, in contrast to *respondeat superior* liability, "a sheriff *may* be held liable for his own negligent conduct, including a failure to train or supervise his subordinates."  *Id.* at *19 (emphasis added); *see Cash v. Cnty of Erie*, No. 04-CV-182C(F), 2007 WL 2027844, at *5 (W.D.N.Y. July 11, 2007) ("[A] cause of action sounding in negligence is legally sustainable against a [sheriff] when the injured party demonstrates that he was injured due to the negligent training and supervision of a law enforcement officer.").

Baxter argues that he cannot be held liable for his own alleged negligent conduct if the Sheriff's Deputies were acting outside the scope of their employment.  This argument conflates the unique standard for a sheriff's liability under a negligent training, supervision, and discipline theory, with the standard for other municipal employers, explained below with respect to the City. Baxter's argument, therefore, is misplaced.

So too is Baxter's argument that the SAC is devoid of allegations that Baxter was ever aware of any supervision or training failures.  As explained below with respect to *Monell* liability, Plaintiff has alleged that Baxter took "no steps to train Sheriff's Deputies on lawfully policing protests and other First Amendment activities," ECF No. 11 ¶ 121, and that Baxter failed to train Sheriff's Deputies on how to distinguish peaceful protests from acts of violence and how they should respond to each differently, *id.* ¶ 122.  Accordingly, Baxter's motion to dismiss the negligent training, supervision, and discipline claim is denied.

**F.    Sixth Claim: Negligence – Individual Defendants**

Plaintiffs allege that Individual Defendants are liable under a negligence theory on the basis that they had duties to "permit the Plaintiffs to peacefully protests and not harm them" and they breached those duties.  ECF No. 11 ¶¶ 317-19.  However, this is the same conduct for which Plaintiffs assert their battery, failure to protect, and excessive force claims.  While, as discussed above, a plaintiff may plead in the alternative, where, as here, they allege intentional conduct— such as for battery or excessive force—"he fails to state negligence."  *Strobridge v. City of Elmira*, No. 20-CV-1125S, 2022 WL 597464, at *11 (W.D.N.Y. Feb. 28, 2022).  Accordingly, Plaintiffs' negligence claims against Individual Defendants are dismissed.

G.       **Fourteenth & Fifteenth Claims: Municipal Liability Pursuant to *Monell***

In their Fourteenth and Fifteenth Claims, Plaintiffs seeks to hold the City, the County, and Baxter liable for First and Fourth Amendment violations under *Monell v. Dep't Soc. Servs.*, 436 U.S. 658, 693 (1978). In essence, Plaintiffs assert that Individual Defendants who caused Plaintiffs' injuries were acting in accordance with the City's and County's unconstitutional customs or policies relating to the use of force during peaceful protests. Defendants, for their part, argue that Plaintiffs have not adequately pled such a custom or policy. For the reasons explained below, the Court disagrees with Defendants and permits the *Monell* claims to proceed.

A.       **Legal Standard**

"[A] local government is liable under § 1983 for its policies that cause constitutional torts." *McMillian v. Monroe Cnty., Alabama*, 520 U.S. 781, 784 (1997); *see Monell*, 436 U.S. at 693. A plaintiff who seeks to impose liability on local governments pursuant to 42 U.S.C. § 1983 must demonstrate that "action pursuant to official municipal policy" caused the injury. *Monell*, 436 U.S. at 692. "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citing *Monell*, 436 U.S. at 691) (additional citations omitted). A plaintiff may demonstrate a policy or custom exists by showing:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Jones v. Westchester County*, 182 F. Supp. 3d 134, 158 (S.D.N.Y. 2016) (quoting *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010)).

"Although there is no heightened pleading requirement for complaints alleging municipal liability under § 1983, . . . a complaint does not suffice if it tenders naked assertions devoid of further factual enhancement." *Green v. City of Mount Vernon*, 96 F. Supp. 3d 263, 301-02 (S.D.N.Y. 2015) (internal quotation marks and brackets omitted). "To survive a motion to dismiss a municipal liability claim, a plaintiff must allege facts tending to support, at least circumstantially, an inference that a municipal policy or custom exists." *McLennon v. City of New York*, 171 F. Supp. 3d 69, 95 (S.D.N.Y. 2016) (internal quotation marks and ellipsis omitted); *see also Cruz v. Vill. of Spring Valley*, No. 21-CV-2073, 2022 WL 428247, at *6 (S.D.N.Y. Feb. 11, 2022) (collecting cases). Put simply, to allege "there is a policy does not make it so." *Vassallo v. City of New York*, No. 15-CV-7125, 2016 WL 6902478, at *14 (S.D.N.Y. Nov. 22, 2016) (internal quotation marks omitted); *see also Cruz*, 2022 WL 428247, at *6 ("Plaintiff cannot, through conclusory allegations, merely assert the existence of a municipal policy or custom, but must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists." (internal quotation marks omitted)).

### B.    Fourteenth Claim: Municipal Liability – City

The City does not move against Plaintiffs' *Monell* claim. ECF No. 9-1. In any event, Plaintiffs have adequately pled a *Monell* claim against the City.

Plaintiffs allege that the City failed to adequately train its officers on the proper handling of First Amendment assemblies. ECF No. 11 ¶ 82. Instead, and despite the City's knowledge of its past training failures and improper uses of force, the City implemented a policy, custom, and practice of using excessive force and military tactics and weapons against peaceful protestors,

treating them the same as large-scale civil disorder and riots.  *Id.* ¶ 83.  Plaintiffs allege that the City's response to at least three previous protests, in which the police used excessive force against peaceful protestors, establishes that the City had a custom of utilizing such force and that the City knew of its training deficiencies but failed to change them.  *Id.* ¶ 92.  Plaintiffs also allege that the City's Mobile Field Force ("MFF")—which was "specially trained and equipped" to provide "rapid, organized and disciplined response to civil disorder [and] crowd control," *id.* ¶ 84—was militarized and filled with police officers who had histories of using excessive force, *id.* ¶ 91, and was not actually or adequately trained to appropriately respond to protests, only "large-scale civil disorders such as riots," *id.* ¶¶ 88-89.  This, in turn, led to the disproportionate use of force against peaceful protestors.  *Id.* ¶ 90.  Again, these allegations are far from the sort of conclusory statements that require dismissal.  Therefore, the City's motion to dismiss the first claim for *Monell* liability is denied.

### C.    Fifteenth Claim: Municipal Liability – County and Baxter

The allegations against the County and Baxter largely mirror those Plaintiffs asserted against the City.  And, for mainly the same reasons, the County and Baxter's motion to dismiss the municipal liability claim asserted against them is denied.

The County and Baxter take issue with Plaintiffs' reference in the SAC to the County's "Hazard Mitigation Plan," under which the County trained Sheriff's Deputies to use force for both "peaceful demonstrations or acts of violence."  ECF No. 11 ¶ 122.  The County and Baxter argue that this Hazard Mitigation Plan is intended to "reduce the potential impact of natural hazards" and therefore "clearly has nothing at all to do with specific training for Sheriff's Deputies who are working during a protest."  ECF No. 17-2 at 24.  However, the County and Baxter ignore the crux

of Plaintiffs' other allegations, which, like those against the City, detail unconstitutional municipal policies, practices, and training failures.

For example, Plaintiffs allege that Baxter and the County subscribed to the theory that peace protests and violent mobs should be treated similarly, and that they trained Sheriff's Deputies to utilize excessive force to quell those peaceful protests. ECF No. 11 ¶¶ 119-30.

Unlike Plaintiffs' allegations against the City, the SAC does not contain specific allegations of prior instances in which the Sheriff's Office used excessive force against protestors. The County and Baxter argue that the absence of such allegations demonstrates that neither could have had knowledge that any problems were widespread. However, Plaintiffs *do* allege that prior to the protests which are the subject of this lawsuit, County legislators called on the Sheriff's Office to implement new training protocols to correct its deficient practices. *Id.* ¶ 131. Although this is a close call, the Court determines at this early stage that such factual allegations are sufficient to survive the motion to dismiss.

## III.  Claims Asserted on Behalf of Howe

### A.  Seventh & Eighth Claims: Unlawful Seizure/False Arrest Under State Law (City Defendants) and Under § 1983 (RPD Officers)

"The elements of a claim of false arrest under § 1983 are substantially the same as the elements of a false arrest claim under New York law." *Maron v. Cty. of Albany*, 166 F. App'x 540, 541 (2d Cir. 2006) (summary order) (internal quotation marks omitted). Accordingly, the Court will address Defendants' motions to dismiss these claims together.

"[U]nder New York law, the elements of a false arrest claim are: (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Id.* "The existence of probable cause to arrest" renders the confinement privileged "and is a complete

16

defense to an action for false arrest." *Horvath v. City of New York*, No. 12-CV-6005, 2015 WL 1757759, at *3 (E.D.N.Y. Apr. 17, 2015). "Probable cause exists when one has knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." *Martinez v. City of New York*, 340 F. App'x 700, 701 (2d Cir. 2009) (summary order) (internal quotation marks and brackets omitted).

City Defendants argue that Howe has not alleged that their conduct was lawful.  ECF No. 9-1 at 12-13.  But that is not an element of a false arrest claim and City Defendants have not argued that City Defendants had probable cause to arrest Howe.  Accordingly, the Court concludes that Howe's claims for false arrest may proceed.  *See Zannino*, 895 F.2d at 17 ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.").

**B.      Ninth & Tenth Claims: Assault & Battery (City Defendants) and Excessive Force (City Defendants)**

Howe alleges that RPD Officers used excessive force against them when RPD Officers arrested Howe.  ECF No. 11 ¶¶ 344-59.  For the same reasons articulated above with respect to all Defendants, Howe's claims may proceed with respect to the RDP Officers.  However, Howe's claim for excessive force is also lodged against the City, pursuant to § 1983.  Although there is no allegation that the City personally used excessive force on Howe, the Court will not dismiss the City from the action so that Howe can determine the identities of any unknown RPD Officers. *See Murphy v. Goord*, 445 F. Supp. 2d 261 (W.D.N.Y. 2006) (denying supervisor's motion to dismiss so that plaintiff could conduct discovery to ascertain identity of John Doe defendants).

**C.  Eleventh & Twelfth Claims:  Malicious Prosecution Under § 1983 (RPD Officers) and State Law (City Defendants)**

"In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment and must establish the elements of a malicious prosecution claim under state law. . . . In New York, those elements are: (1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Rodriguez v. City of New York*, No. 21CV1649AMDRLM, 2022 WL 768159, at *6 (E.D.N.Y. Mar. 14, 2022) (quoting other sources).

The City Defendants contend that Howe has not established the second element: termination of the proceeding in plaintiff's favor.  ECF No. 9-1 at 14.  In a recent decision, the Supreme Court rejected Second Circuit precedent on the "favorable termination" element and held that "a Fourth Amendment claim under § 1983 for malicious prosecution does not require the plaintiff to show that the criminal prosecution ended with some affirmative indication of innocence." *Thompson v. Clark*, 142 S. Ct. 1332, 1341 (2022).  Rather, "[a] plaintiff need only show that the criminal prosecution ended without a conviction." *Id.*  Howe alleges that the charges against them were dismissed for "facial insufficiency" on November 2, 2020.  ECF No. 11 ¶¶ 365-66.  Those allegations easily meet *Thompson*'s low bar.

But *Thompson* does not necessarily settle all the potential legal issues related to Howe's Twelfth Claim.  For one thing, while it is obvious that *Thompson* bears materially on Plaintiff's Eleventh Claim, which is a malicious prosecution claim arising under *federal* law, it is unclear how *Thompson* bears on their Twelfth Claim, which is a malicious prosecution claim arising under *state* common law.  *Zwick v. Town of Cheektowaga*, No. 17-CV-727, 2021 WL 4895106, at *3 (W.D.N.Y. Oct. 20, 2021) ("New York law and federal law diverge on the showing required to

satisfy the 'favorable termination' element."). Nevertheless, because the parties do not address this issue, the Court declines to decide it now. The Eleventh and Twelfth Claims may proceed.

### D.     Thirteenth Claim: Evidence Fabrication/Denial of Fair Trial Under § 1983 – RPD Officers

To state a claim for fabricated evidence, a plaintiff must plead that "an (1) investigating official (2) fabricates information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result." *O'Hara v. City of New York*, No. 17-CV-4766(ILG)(RML), 2021 WL 4932287, at *6 (E.D.N.Y. Oct. 22, 2021) (quoting another source).

The case law suggests that one court appearance post-arraignment is a sufficient deprivation of liberty. *See Levy v. City of New York*, 935 F. Supp. 2d 575, 589 (E.D.N.Y. 2013). Howe alleges that they were arrested on September 2, 2020, and then the charges were "dismissed by Judge Stephen Miller [in] their entirety on November 2, 2020 because the officer's allegations in the accusatory instrument failed to establish that Mx. Howe had committed any crime." ECF No. 11 ¶ 203. It is not clear whether Howe attended one court appearance post-arraignment or whether the one appearance was the arraignment. Reading the allegations in the light most favorable to Howe the Court concludes that this claim should proceed to discovery.

### CONCLUSION

For the reasons explained above, Plaintiffs' motion to amend, ECF No. 19, is GRANTED. Defendants' motions to dismiss, ECF Nos. 13, 17, are GRANTED IN PART and DENIED IN PART. The Sixth Claim (Negligence against Individual Defendants) is DISMISSED. The motions are denied in all other respects. The following claims may proceed:

(1)     excessive force against Individual Defendants, pursuant to § 1983;

19

(2)     First Amendment infringement and retaliation against all Defendants, pursuant to § 1983;

(3)     failure to intervene against Individual Defendants, pursuant to § 1983;

(4)     assault and battery against the City and Individual Defendants, pursuant to New York State law;

(5)     negligent training, supervision, and discipline against Baxter, pursuant to New York State law;

(7)     Howe's claim for unlawful seizure/false arrest against the City Defendants, pursuant to New York State law;

(8)     Howe's claim for unlawful seizure/false arrest against RPD Officers, pursuant to 42 U.S.C. § 1983;

(9)     Howe's claim for assault and battery against the City Defendants, pursuant to New York State law;

(10)    Howe's claim for excessive force against City Defendants, pursuant to § 1983;

(11)    Howe's claim for malicious prosecution against RPD Officers, pursuant to § 1983;

(12)    Howe's claim for malicious prosecution against the City Defendants, pursuant to New York State law;

(13)    Howe's claim for evidence fabrication/denial of fair trial against RPD Officers, pursuant to § 1983;

(14)    municipal/*Monell* liability against the City for alleged violations of the First, Fourth, and Fourteenth Amendments related to the protests, pursuant to 42 U.S.C. § 1983; and

(15)   municipal/*Monell* liability against the County and Baxter for alleged violations of

the First, Fourth, and Fourteenth Amendments related to the protests, pursuant to §

1983.

A status conference is scheduled in all protest-related cases for July 21, 2022 at 3:00 p.m.

IT IS SO ORDERED.

Dated: June 30, 2022
      Rochester, New York           HON. FRANK P. GERACI, JR.
                                  United States District Judge
                                  Western District of New York